UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTINA G.,

                          Plaintiff,

v.                                                                                             CASE NO. 1:22-cv-00173 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 8, 9), as well as Plaintiff's Response (Doc. 10). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 8) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**I.    RELEVANT BACKGROUND**

    **A.    Procedural Background**

On April 5, 2019, Plaintiff protectively filed an application for a period of disability and disability insurance benefits and supplemental security income, alleging disability beginning October 1, 2017. (Tr. 59.) Plaintiff's claims were denied initially on September

17, 2019 and upon reconsideration. (Tr. 95, 96, 139, 140.) She then timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. 165-66.) On August 18, 2020, Plaintiff appeared with counsel for a telephonic hearing before ALJ Timothy McGuan. (Tr. 36-58.) Vocational Expert Mary Vasishth also testified at the hearing. (*See id*.) On September 17, 2020, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 12-35.) The Appeals Council denied her request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to this Court.

### B.   Factual Background[1]

Plaintiff was born on May 19, 1992 and alleged a disability onset date of October 1, 2017. (Tr. 59.) She graduated high school. (Tr. 39.) She identified arthritis, fibromyalgia, synovitis, knee injury, bipolar disorder, depression, extreme anxiety disorder, trauma, posttraumatic stress disorder (PTSD), and bursitis as disabling conditions. (Tr. 59-60, 77-78.) At the hearing, Plaintiff indicated pain from arthritis and fibromyalgia, anxiety, panic (including panic attacks), PTSD, and bipolar depression as making it difficult to work, and particularly, to concentrate. (Tr. 40.)

With regard to her physical impairments, she described that repetitive motion causes her to experience pain due to her arthritis, and she indicated that she is in constant pain throughout her body due to her arthritis. (Tr. 40, 44.) Plaintiff further identified typing, picking up the phone, cashing people out, and standing as examples of repetitive motion that caused her pain. (Tr. 40.) Additionally, she described effects in her hands, including numbness, swelling, and stiffness, and she indicated that repeated motion caused difficulty with gripping, which would lead to her dropping things and increased pain. (Tr.

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ. Other facts will be developed throughout the opinion as relevant to the Court's analysis.

2

40, 45, 46.) She described the swelling as occurring most often in the morning and the evening. (Tr. 45.)

She also indicated that standing, bending, kneeling, and squatting were painful, so much so that she could no longer do them, as she had two major knee surgeries within six months. (Tr. 41.) Plaintiff explained she has been using a cane since May 2019, when she was instructed to obtain one following her first knee surgery. (*Id.*) She described that she could sit and stand for five to ten minutes before she would need to change positions, and she indicated that she could walk one city block before needing to stop and rest. (Tr. 49.) She identified being able to lift and carry five pounds. (Tr. 50.) She also described that she took medications to treat the pain, which results in nausea, headaches, and tiredness. (Tr. 41.)

With regard to her mental conditions, Plaintiff indicated she does not often leave the house, due to her anxiety and PTSD, and only leaves for doctor appointments. (Tr. 47.) She explained she was afraid of getting severely injured if she leaves home. (*Id.*) Plaintiff described experiencing panic attacks, during which she feels like her heart will burst. (Tr. 47-48.) She explained that petting her dog will sometimes help calm her down. (Tr. 48.) Plaintiff also described her bipolar depression to include highs and lows during which her mood can change without warning. (*Id.*) She further explained that she has difficulty concentrating, making it difficult to perform tasks. (*Id.*)

Plaintiff testified that she lives with her parents. (Tr. 46.) Plaintiff described she lays down about 80% of her day, getting up only to go to the restroom or eat. (Tr. 49.) She indicated she sleeps more than the average person, probably 15-18 hours a day. (Tr. 50). She explained she does not perform any household chores, do any cooking, or

go shopping. (Tr. 49.) She also does not go out with other people, as she is afraid they will hurt her or not understand what is wrong with her and tease her. (*Id.*) She also indicated she does not go to movies, church, or sporting events. (*Id.*)

Plaintiff also described that she has difficulty getting along with others. (Tr. 50.) She explained that no one in her household understands the anxiety or PTSD. (Tr. 50-51.) She indicated that she "just can't handle how childish people are, or how mean authority figures are, and it puts me into a panic, or I get snappy, and will argue back." (Tr. 51.)

**C.     ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2024. (Tr. 17.)

2. The claimant has not engaged in substantial gainful activity since October 1, 2017, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*). (Tr. 17.)

3. The claimant has the following severe impairments: juvenile arthritis of the left knee, complex Baker's cyst, status post two surgeries, degenerative disc disease of the lumbar spine, fibromyalgia, inflammatory poly-arthropathy, depressive disorder, bipolar disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD") (20 CFR 404.1520(c) and 416.920(c)). (Tr. 18.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 18.)

5. The claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), because she is able to lift, carry, push, and/or pull ten pounds occasionally and less than ten pounds frequently, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Although the

    claimant is unable to climb ladders, ropes, and scaffolds, she is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant is able to frequently handle, finger, and feel bilaterally. In addition, the claimant is able to engage in simple, unskilled work of a routine and repetitive nature, and she is able to interact occasionally with others (*i.e.*, the public, co-workers, and supervisors). (Tr. 21-22.)

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965). (Tr. 27.)

7. The claimant was born on May 19, 1992, and she was 25 years old, which is defined as a younger individual, age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963). (Tr. 27.)

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964). (Tr. 27.)

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968). (Tr. 27.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). (Tr. 27.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2017 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). (Tr. 28.)

## II.   LEGAL STANDARD

### A.   Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence

from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

     **B.**    **Standard to Determine Disability**

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner

considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

### III.    ANALYSIS

Plaintiff asserts three arguments in support of her request for remand. First, she argues that the ALJ failed to adequately explain why he rejected the more limiting portions of the opinions of Drs. Schaich, Tzetzo, and Juriga in crafting the ultimate RFC. (*See* doc. 8-1 at 14.) Second, she contends that the ALJ erred by relying on the opinions of Drs. Figueroa, Krist, and Miller, which she argues were stale. (*See id.* at 19.) Finally, she argues that the ALJ improperly found the opinion of Counselor Patrick Gerrity, MS, LMFT, unpersuasive, contending the ALJ failed to adequately explain his analysis of the opinion's supportability and consistency. (*See id.* at 21-22.)

**A. The ALJ Properly Analyzed the Medical Opinions in Crafting his RFC.**

Plaintiff contends that the ALJ did not provide any reason for rejecting the more limiting portions of the opinions of Drs. Schaich, Tzetzo, and Juriga. (*See* doc. 8-1 at 16.) Specifically, with regard to Dr. Schaich's opinion, Plaintiff argues that the ALJ "gave no reasons for failing to reconcile the RFC with the portion of the opinion that Plaintiff was moderately limited in the ability to regulate emotions, control behavior, and maintain well-being." (*Id.* at 16.) With regard to the opinions of Dr. Tzetzo and Dr. Juriga, Plaintiff similarly argues that the ALJ failed to reconcile his RFC with the portions of these opinions

finding Plaintiff "was moderately limited in the ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." (*Id.* at 18.) Plaintiff argues that the ALJ's restriction of Plaintiff to "simple, unskilled, routine, and repetitive work with limitations on interaction" was insufficient to encompass these limitations, and in light of the VE's testimony regarding an employer's tolerance of absenteeism and off-task time, the ALJ's failure to include these limitations was harmful error. (*See id.* at 16, 18.)

As a threshold matter, the Court disagrees with Plaintiff's contention that the ALJ rejected the more limiting portions of these medical opinions. After summarizing each of the opinions in detail, the ALJ found them to be persuasive "due to [the doctors'] mental health expertise and the relative consistency of their opinions with each other and the overall medical evidence, as discussed above (Exhibits 1A, 2A, 5A, 6A, 17F, and 25F)." (Tr. 26.) The ALJ then ultimately limited Plaintiff to "simple, unskilled work of a routine and repetitive nature," noting that "she is able to interact occasionally with others (*i.e.*, the public, co-workers, and supervisors)." (Tr. 22.)

Contrary to Plaintiff's argument, caselaw within this circuit reflects that an ALJ can properly account for these types of mental limitations by restricting a plaintiff to simple, unskilled, routine, and repetitive work. *See Denise Marie T.-W. v. Comm'r of Soc. Sec.,* Case No. 1:22-cv-327(JJM), 2024 WL 4162490, at * 6 (W.D.N.Y. Sept. 12, 2024) (noting that "[i]t is well-settled that up to moderate limitations of a plaintiff's ability to regulate

emotions, control behavior, and maintain well-being are 'consistent with' an RFC limiting plaintiff to 'simple, routine, and repetitive tasks' and 'occasionally interacting with supervisors, coworkers, and the public.'"); *Hintsa N. v. Comm'r Soc. Sec.*, Case. No. 20-cv-6335-FPG, 2021 WL 3615704, at *2 (W.D.N.Y. Aug. 16, 2021) (concluding that "[t]he ALJ's RFC limiting Plaintiff to simple, routine, and repetitive tasks accounted for and incorporated Dr. Deneen's opinion—which the ALJ found persuasive—that Plaintiff would have moderate limitations in concentration, production, and pace"); *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 12 (W.D.N.Y. 2021) ("[T]he ALJ's limiting Plaintiff to occasional interaction with supervisors, coworkers and the general public, as well as low stress work, defined as work involving occasional decision making, is consistent with the medical evidence in the record and is supported by the opinion of Dr. Deneen, who found that Plaintiff would be moderately limited in interacting with others and regulating her emotions, behavior, and well-being."). Thus, the ALJ's additional restrictions sufficiently accounted for the more limited portions of the opinions identified by Plaintiff.

Further, to the extent Plaintiff argues that the ALJ erred by not including limitations pertaining to off-task time or absenteeism, this argument fails. To begin, none of these providers expressly opined that Plaintiff would be off-task more than 10% of the time, or absent a certain number of days each month, as a result of her mental health conditions. Plaintiff's argument, then, merely speculates that the "more limiting portions" of the opinions she identified would result in off-task time or increased absenteeism. Such speculation cannot serve as a basis for remand. *See Morales v. Comm'r of Soc. Sec.*, Case No. 17-cv-341-FPG, 2019 WL 1109572, at *7 (rejecting the plaintiff's unsupported argument that "'moderate' limitations in the ability to maintain attention and concentration

translates into being 'off task' for some percentage during the workday.") As it is Plaintiff's burden to prove a more restrictive RFC than that assessed by the ALJ, Plaintiff's failure to do so precludes remand. *See Denise Marie T.-W.*, 2024 WL 4162490, at *4.

Finally, Plaintiff's reliance on *Jimmie E. v. Comm'r of Soc. Sec.*, 20-CV-0406, 2021 WL 2493337, at *1 (W.D.N.Y. June 18, 2021) is unavailing. There, the plaintiff not only had moderate limitations in regulating emotions and controlling behavior, but he also had a history of physical altercations with others. *Id.* at *4. No such history exists here. *See Brandiann B. v. Comm'r of Soc. Sec.*, No. 22-CV-00633-HKS, 2025 WL 405817, at *8 (W.D.N.Y. Feb. 5, 2025) (distinguishing *Jimmie E.* when that plaintiff did not have a history of physical altercations and affirming the RFC as supported by substantial evidence).

As such, the Court finds that the ALJ's RFC included restrictions consistent with all portions of the identified opinions and was thus supported by substantial evidence.

### B. The ALJ's Reliance on the Opinions of Drs. Figeroa, Krist, and Miller was Proper Because the Opinions were Not Stale.

Next, Plaintiff argues the opinions of Drs. Figeroa, Krist, and Miller were stale because they were rendered before Plaintiff's October 2019 motor vehicle accident and a subsequent surgery in January 2020, which she alleges caused deterioration in her conditions. (*See* doc. 8-1 at 19.)

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016). While a medical opinion is not necessarily stale based on its age, it may be stale if it does not account for a plaintiff's deteriorating condition. *See Samantha T. v. Comm'r of Soc. Sec.*, Case No. 1:22-cv-139 (JGW), 2024 WL 4582825, at *5 (W.D.N.Y. Oct. 25, 2024)

(internal citations omitted).  That said, "[a] more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Anthony F. v. Comm'r of Soc. Sec.*, Case No. 23-cv-33-FPG, 2023 WL 7294874, at *4 (W.D.N.Y. Nov. 6, 2023) (internal quotation omitted).  Moreover, "[t]he fact that plaintiff elected to have surgery, however, does not render [a prior medical] opinion stale." *Billy B. v. Comm'r of Soc. Sec.*, No. 20-CV-0036MWP, 2021 WL 3191882, at *6 (W.D.N.Y. July 28, 2021) (internal citation omitted).  *See also Alexander v. Comm'r of Soc. Sec.*, 2020 WL 5642184, *3 (W.D.N.Y. 2020) ("[a] subsequent surgery, however, is insufficient, standing alone to render a medical opinion stale") (collecting cases).  "Where the submitted evidence did not directly contradict a doctor's opined limitations, and further, the ALJ analyzed the recent evidence, the doctor's opinion was not impermissibly stale." *Robin H. v. Comm'r of Soc. Sec.*, No. 1:21-CV-507-DB, 2023 WL 3645489, at *13 (W.D.N.Y. May 25, 2023).  Plaintiff bears the burden of showing that her condition deteriorated after the medical opinions were provided.  *See Christopher C. v. Comm'r Soc. Sec.*, Case No. 20-cv-1774, 2022 WL 16797970, at *4 (W.D.N.Y. Nov. 8, 2022) (citing *Vincent B. v. Comm'r of Soc. Sec.*, 561 F. Supp. 3d 362, 367 (W.D.N.Y. 2021)).

Having reviewed the record, the Court finds that Plaintiff has not carried her burden to show that her condition deteriorated after the challenged medical opinions were provided.  Medical records following both the motor vehicle accident and the January 2020 surgery do not reflect that Plaintiff's conditions deteriorated.  To the contrary, they actually show some improvement from her evaluation with Dr. Figueroa, where she presented with an abnormal gait and a severe limp, and reported constant pain at a level 8 or 9.  (Tr. 743-44.)  Indeed, in February 2020, Plaintiff reported that she was doing well

11

after surgery, the pain was beginning to subside and was tolerable, and that she was "now feeling up to getting back into dance." (*See* Tr. 1066, 1323, 1319.) Objective notes reflect "no obvious instability" in the knees and noted that the "[m]otor strength is intact." (Tr. 1067.) In March, Plaintiff reported a "euthymic mood despite the COVID 19 outbreak because of her improving physical health with her knee. . . ." and was engaging in more activities outside the home. (Tr. 1334.) By April, Plaintiff reported walking down her block, which was further than she had ever gone before, and objectively, she was able to almost fully bear weight on her knee. (Tr. 1339, 1410.) She denied joint pain, morning stiffness, joint swelling, and weakness. (Tr. 1410.) Although she was noted to be progressing slowly, her foot drop was improving, and she had normal muscle tone in her left knee. (Tr. 1070-71.) In June, she reported exercising regularly, riding her bike to work, and in July, she started a daily routine of yoga. (Tr. 1113, 1385, 1391.) Accordingly, the medical evidence does not reflect deterioration from the time the medical opinions were rendered.

Further, the ALJ acknowledged Plaintiff's October 2019 motor vehicle accident and the January 2020 surgery, noting:

> [e]ven so, after the claimant was in an October 2019 motor vehicle accident, she underwent an open decompression of the peroneal nerve on the left knee and evacuation of the popliteal cyst in January 2020 (Exhibit 27F). A February 2020 orthopedic treatment note stated that the claimant reportedly was "doing well after surgery" (Exhibit 27F, page 17).

(Tr. 23.) And Dr. Miller acknowledged the motor vehicle accident in her review of the file on reconsideration, "noted is that no serious injury has become of the [motor vehicle accident]." (Tr. 113, 134, 1006.)

Plaintiff's citations to the record do not merit a different conclusion. While she identifies notes reflecting her condition immediately following the motor vehicle accident through date of surgery, she does not identify any post-surgery treatment notes that reflect deterioration of her condition. To the contrary, as noted above, it appears that the January 2020 surgery was a success, and she was experiencing at least some improvement in her condition.

Accordingly, the Court finds that Plaintiff has failed to carry her burden of showing deterioration in her condition following the medical events that would render these opinions stale. Thus, the ALJ properly relied on them.

### C. The ALJ Properly Analyzed Counselor Gerrity's Opinion and Sufficiently Explained the Necessary Factors.

Plaintiff contends that the ALJ improperly rejected Counselor Gerrity's opinion because he only cited to a single exhibit (Exhibit 29F) without explaining how that exhibit supported his conclusion. (*See* doc. 8-1 at 23.) Plaintiff argues this is inconsistent with the current regulations in analyzing medical opinions, especially since Counselor Gerrity was the only treating source to offer an opinion in this matter. (*See id.* at 23-24.)

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y.

2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

The Court finds no error in the ALJ's analysis of Counselor Gerrity's opinion. Contrary to Plaintiff's argument, ALJ McGuan thoroughly analyzed Counselor Gerrity's opinion—and the reasons he found it not to be persuasive, including supportability and

14

consistency.[2]  Specifically, the ALJ found that Counselor Gerrity's report was internally inconsistent.  (*See* Tr. 27) (noting ". . . the "marked" B criteria limitations (in the social functioning and concentration, persistence, or pace categories) are internally inconsistent with his own check-box limitations earlier in the report.") He also concluded that Counselor Gerrity's off-task and absenteeism limitation found no support in his treatment records or in any of the medical records, nor was there any explanation as to why he reached these conclusions.  (*See id.*) (recognizing that "[t]his treating source indicated that the claimant will be off-task for more than 25% of an eight-hour workday and that the claimant will be absent from work more than four days per month, but there are no cited clinical findings or adequate explanation to support the basis for these speculative opinions.")  Further, the ALJ found Counselor Gerrity's opinion to be inconsistent with "the well-supported opinions" of Drs. Schaich, Tzetzo, and Juriga, further rendering the opinion unpersuasive.  (*See id.*)  Nonetheless, the ALJ still acknowledged the treating relationship, noting "the report and the specific opinions were carefully considered in balance with the overall evidence in the record when devising the above-listed residual functional capacity."  (*Id.*)

The Court finds no error in the ALJ's evaluation of Counselor Gerrity's opinion, and that the ALJ appropriately analyzed the supportability and consistency factors.  The ALJ's RFC was supported by substantial evidence.

---

[2] The Court notes that the ALJ's citation to Exhibit 29F is a citation to Counselor Gerrity's opinion itself—not the records with which the opinion was inconsistent.

15

## IV. CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**.

Dated: May 12, 2025  
Rochester, New York

        J. Gregory Wehrman  
        HON. J. Gregory Wehrman  
        United States Magistrate Judge